W. H. FOULKE, Appellant, v. THE TOWN OF AGENCY CITY and others, Appellees.

**Municipal corporations:** STREETS: DEDICATION.: EVIDENCE. Mere use is not ordinarily in itself sufficient to establish a public way by prescription, but when long continued with knowledge of the owner of the property it becomes important as bearing upon the question of a public dedication, either express or implied.
In the instant case. the public for a long series of years had been accustomed to use a way as a means of access to a depot and as a continuous street for travel. The town ·authorities had assumed control over it by grading, and the owner had recognized a public right therein by complying with municipal orders respecting the same. *Held,* to show a dedication to the public.

*Appeal from Wapello District Court.*—HON. M. A.
ROBERTS, Judge.

TUESDAY, OCTOBER 19, 1909.

REHEARING DENIED TUESDAY, JANUARY 18, 1910.

ACTION to restrain the defendants from using or improving an alleged public street in the town of Agency City. Decree for the defendants, and plaintiff appeals.—
*Affirmed.* .

*Jacques & Jacques,* for appellant.

*W. W. Epps,* for appellees.

WEAVER, J.—Forty years or more prior to the commencement of this action the Burlington & Missouri Railroad Company acquired the title to station grounds at Agency City. The tract dedicated to this use was one thousand and sixty-seven feet in length east and west, and four hundred feet in width north and south. The plat of Agency City was so laid out as to provide a street known as Front Street along the north border of the station grounds, and another street known as Washington Avenue on the south border. Oak Street, extending north and south, was interrupted by the railway property; the portions north and south of said grounds being known respectively as North Oak and South Oak. In other words, there was no platted public way across the station yard. The station building was erected a little east of the street line. The principal part of the town was on the south side of the railroad, but there were a mill and warehouse on the north side. The travel between these buildings and the town, as well as the travel between the town and the country to the north, to a great extent at least, crossed the yard west of the depot, and substantially along the line of a path or track connecting the north end of South Oak Street with the south end of North Oak. The lots and streets on the north side of the yard were mostly uninclosed, and unimproved, and the travel there was not closely confined to the platted streets, but the evidence shows with reasonable clearness that the way across the station yard had the care and oversight of the town authorities as a public way. This general situation continued without substantial change until April, 1906, when the Chicago, Burlington & Quincy Railroad Company, successor in title to the Burlington & Missouri Company, having abandoned

this part of its line, quitclaimed its title and interest in
the station grounds to the plaintiff, making its conveyance
expressly "subject to any rights of the public acquired by
use or otherwise in Oak Street extended across said land."
The town makes claim that this extension of the street has
by dedication and long-continued use become a public way,
and the plaintiff, denying the validity of such claim, brings
this action to equity to establish his alleged rights in the
premises.   The trial court found with the defendants upon
the merits of the controversy, and dismissed the petition.

The case involves no intricate question of law.   Some
of the material questions of fact are in dispute, but there
is no occasion for reciting the statements and recollections
of the numerous witnesses called in support of the claims
of the contending parties.   After reading the record with
care we are satisfied with the correctness of the conclusion
reached by the trial court.   Though not undisputed, the
weight of the testimony is to the effect that for a full gen-
eration the public has been accustomed to use this way,
not only as a means of access to the depot building, but as
a continuous street for travel and traffic between the north
and south sides of the railroad.   It is also shown that
the town by its officers at different times assumed authority
over this way, grading and working it across the railroad
grounds, and that the railway company without objection
or protest recognized the right of the town and of the pub-
lic in this respect by complying with orders and notices for
the repair of the walks, and by cutting their standing.
trains to avoid obstructing travel.   In connection with
these facts the express reservation, made in the deed to
plaintiff of the rights "acquired by the public by use or
otherwise" in the Oak Street extension is very significant
of the railroad company's attitude in the matter.   It is
true, as we have already said, that the facts to which we
have referred are in a large part the subject of dispute be-
tween the witnesses, but we think the preponderance is

clearly with the defendants. While mere use is not in itself ordinarily sufficient to establish a public way by prescription, it is, when long continued with knowledge of the owner of the property, a fact of much importance, as bearing upon the dedication, express or implied, to the public. *State v. Birmingham,* 74 Iowa, 410. Plaintiff's title was acquired by quitclaim only and with express notice of the rights of the public, and he can assert no right in the premises which could not have been asserted by his grantor. The defendants show a fairly clear case of dedication by the railway company, to say nothing of the strength of the public claims by prescription.

The decree of the district court is *affirmed.*